UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:07CR-12-JHM**

**UNITED STATES OF AMERICA**                                                      **PLAINTIFF**

**v.**                 **MEMORANDUM OPINION AND ORDER**

**CANAL BARGE COMPANY, INC.**
**PAUL D. BARNES**
**JEFFERY A. SCARBOROUGH**
**and RANDOLPH MARTIN**                                              **DEFENDANTS**

This matter is before the Court upon a motion by Defendants, Canal Barge Company, Paul D. Barnes, Jeffrey A. Scarborough, and Randolph Martin, to exclude the testimony of the United States' experts [DN 47], and on a motion by the United States to exclude the testimony of the Defendants' experts [DN 51]. A Daubert hearing was conducted on January 31, 2008. Having been fully briefed and argued, the matter now stands ripe for decision.

**BACKGROUND**

The Indictment in this case charges Canal Barge Company, Paul Barnes (Port Captain for Canal Barge), Jeffery Scarborough (Captain of the M/V Hagestad), and Randolph Martin (Pilot of the M/V Hagestad) with one count of conspiracy to violate the Ports and Waterways Safety Act; one count of violating the Ports and Waterways Safety Act; and one count of negligent violation of the Clean Water Act. The indictment charges that on or about June 16, 2005, while traveling south on the Mississippi River, the crew of Canal Barge's M/V

Hagestad discovered benzene leaking from a crack in the tank of Canal Barge Company's barge 222 (hereinafter "CBC-222"). The United States alleges that the benzene flowed over the side of the barge into the river. The Defendants dispute that benzene actually flowed into the river. The crack of the barge was temporarily patched by Captain Scarborough. The United States Coast Guard was not contacted regarding the leak. The barge was passed to the tow of a second Canal Barge owned vessel, and eventually to a third vessel owned by an outside company. On June 20, 2005, as the third vessel headed north on the Ohio River with CBC-222 in tow, the barge began leaking benzene again.

The Defendants seek to exclude the testimony of the Government's proffered expert witnesses, David Hughes, Christopher Weis, and Nathan Knapp, alleging that they are not qualified to render an expert opinion and that their testimony does not meet the standards of Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Likewise, the Government seeks to exclude the testimony of the Defendants' proffered expert witnesses, Frank Paskewich, Charles Havnen, Jerald Tinkey, Michael or Todd Rushing, Edward Shearer, Brent Miller, Troy Corbin, and Paul Whitehead, alleging that their testimony does not meet the relevance and/or reliability standards of Fed. R. Evid. 702 and Daubert.

## STANDARD

"The admission or exclusion of expert testimony is a matter historically left to the broad discretion of the trial court." Burke ex rel. Burke v. U-Haul International, Inc., 2006 WL 3043421, * 2 (W.D. Ky. October 20, 2006)(citing Barnes v. Kerr Corp., 418 F.3d 583,

588 (6th Cir. 2005)). Rule 702 of the Federal Rules of Evidence provides the framework for district courts to use in determining the admissibility of expert testimony. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, the trial judge acts as gatekeepers to ensure that expert evidence is both reliable and relevant. See Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)("Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" Id. at 147)). "Courts must act as 'gatekeepers' to ensure that the expert is duly qualified to render an expert opinion on the issues to be decided, that his testimony will assist the trier of fact, and that the proffered testimony is reliable." Kentucky Associated General Contractors Self-Insurers' Fund v. Old Republic Insurance Co., 2008 WL 373701, *2 (W.D. Ky. February 8, 2008)(citing Daubert, 509 U.S. at 589).

In Daubert, the Supreme Court identified a non-exhaustive list of factors that may help a court to assess the reliability of a proposed expert's opinion including (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." Daubert, 509 U.S. at 592-94. See also Mike's Train House, Inc. v. Lionel,

L.L.C., 472 F.3d 398, 407 (6th Cir. 2006). The Supreme Court has emphasized that while a federal trial judge's gatekeeping obligation under Rule 702 applies to all types of expert testimony, the Daubert factors do not constitute a definitive checklist or test. Rather, the "gatekeeping inquiry must be 'tied to the facts' of a particular case," depending on "the nature of the issue, the expert's particular expertise, and the subject of his testimony." Kumho Tire Co., 526 U.S. at 150; see also Johnson v. Manitowoc Boom Trucks, Inc., 484 F.3d 426, 430 (6th Cir. 2007).

Under Daubert, the court must also determine whether the proposed expert testimony is relevant, i.e. whether the testimony will assist the trier of fact. Daubert, 509 U.S. at 591-592. The rules define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable, or less probable, than it would be without the evidence." Fed. R. Evid. 401. The relevance requirement ensures "that there is a 'fit' between the testimony and the issue to be resolved by the trial." Greenwell v. Boatwright, 184 F.3d 492, 496 (6th Cir. 1999).

Additionally, to qualify as an expert under Rule 702, a witness must establish his expertise by reference to "knowledge, skill, experience, training, or education." Fed. R. Evid. 702; see also Berry v. Crown Equipment Corp., 108 F. Supp. 2d 743, 749 (E.D. Mich. 2000). "[T]he trial court must determine whether the expert's training and qualifications relate to the subject matter of his proposed testimony." Id. In making this assessment, the Court must examine "'not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" Id. (quoting

Smelser v. Norfolk Southern Ry. Co., 105 F.3d 299, 303 (6th Cir. 1997)).  See also Kumho Tire Co., 526 U.S. 137.  "Gaps in the qualifications or knowledge of an expert ordinarily run to the weight of the particular expert's testimony rather than its admissibility."  Burke, 2006 WL 3043421, * 3.

## GOVERNMENT'S EXPERTS

### A.  David Hughes

The Government's notice indicates that Mr. Hughes will testify as both a fact witness and an expert witness concerning his observation of the benzene leak from CBC-222 and the repair of CBC-222 on June 20, 2005.  Mr. Hughes has specialized knowledge concerning the proper repair of chemical barges and the integrity and adequacy of the substance initially used to patch CBC-222.[1]

Defendants concede that Mr. Hughes can offer factual information relevant to CBC-222's condition on June 20, 2005.  However, Defendants object to qualifying Mr. Hughes as an expert.  Initially, Defendants assert that marine chemists such as Mr. Hughes are not qualified to testify regarding the repair of chemical barges where no "welding, burning or live fire-producing actions" occurred.  The Court has reviewed the qualifications of Mr. Hughes and finds that he is qualified to testify as an expert.  Mr. Hughes is a certified marine

---

[1] Additionally, in an interview conducted on October 15, 2006, Mr. Hughes told investigators that when he arrived at the barge on June 20, 2005, "he saw the chemical stains down the side of the barge and although he did not personally witness it, it was apparent that benzene had run over the sides and into the river." (October 15, 2006, Investigation Report at 2.)  The appropriateness of this testimony is addressed in the Court's discussion of Mr. Knapp's testimony.

5

chemist who has worked as an independent contractor since 1996 certifying to the Coast Guard that chemical barges which have experienced problems have been repaired properly. Mr. Hughes is often called upon in emergency situations to repair chemical barges himself. In fact, in the present case, both American Commercial Barge Lines and the Defendant contacted him on June 20, 2005, to repair the leak on CBC-222. It is clear that Mr. Hughes possesses the requisite "knowledge, skill, experience, training, or education" to render an opinion in this case.

Defendants maintain that expert testimony from Mr. Hughes regarding the integrity and adequacy of the epoxy patch is not relevant to any issues in this case. Additionally, Defendants object to Mr. Hughes serving as both a fact witness and an expert witness. Contrary to Defendants' arguments, the Court finds that the proposed testimony of Mr. Hughes is relevant. The material and adequacy of the original patch placed on CBC-222 on June 16, 2005, is relevant to whether Canal Barge violated the Clean Water Act. Similarly, the condition of the barge on June 20, 2005, is relevant to whether Canal Barge violated either of the statutes in question. Furthermore, the Sixth Circuit has recognized that a witness may testify as both a fact witness and an expert witness in the same case as long the jury is advised of the dual role of the witness and an adequate cautionary jury instruction is provided. See United States v. Tocco, 200 F.3d 401, 418 (6th Cir. 2000); United States v. Stone, 222 F.R.D. 334, 338 (E.D. Tenn. 2004).

Finally, the Government appears to have abandoned its intention of eliciting testimony from Mr. Hughes regarding the amount of benzene he estimates was released from CBC-222.

If at trial, counsel for the Government changes his or her mind, counsel should inform the Court so Mr. Hughes can be questioned outside of the presence of the jury regarding his methodology in determining the quantity of benzene released.

### B. Christopher Weis

The Government's notice indicates that Dr. Weis will testify concerning the nature of benzene and the health effects associated with benzene exposure. Dr. Weis is also expected to testify that the crack in CBC-222 and the subsequent release of benzene placed the crew of the M/V Hagestad at a significant risk of overexposure to benzene and that the symptoms expressed by one of the crew members is consistent with short-term/acute overexposure to benzene. Dr. Weis will also opine that the release of benzene created a risk of fire or explosion aboard the M/V Hagestad.

Defendants object to qualifying Dr. Weis as an expert. First, Defendants argue that Dr. Weis is not qualified to offer the proposed testimony. Defendants claim that Dr. Weis has devoted little of his career to the investigation of benzene's health effects and explosion risks. The Court has reviewed the qualifications of Dr. Weis and finds that he is qualified to testify as an expert. Dr. Weis is a board certified toxicologist and has worked for Environmental Protection Agency as a Regional and then Senior Toxicologist since 1989. Dr. Weis holds a Ph. D. in Toxicology and Physiology from Michigan State University. Dr. Weis has served as a scientific advisor during EPA emergency response and remedial actions. Dr. Weis has also designed and overseen the risk assessment of several superfund sites in which benzene was a contaminant. It is clear that Dr. Weis possesses the requisite

work experience, training and education to render an opinion regarding the health effects and risk of benzene. Additionally, Dr. Weis's experience as both science and safety advisor on sites involving highly reactive chemicals qualifies him to discuss both the risk of fire and explosions associated with benzene leaks. Furthermore, as noted above, any perceived "[g]aps in the qualifications or knowledge of an expert ordinarily run to the weight of the particular expert's testimony rather than its admissibility." Burke, 2006 WL 3043421, * 3. For these reasons, the Court finds Dr. Weis is qualified to render an expert opinion in the present case.

Second, Defendants argue that the opinion of Dr. Weis lacks sufficient facts and data to satisfy the reliability standard of Rule 702. Defendants argue that Dr. Weis formulated his opinion without information regarding the amount and concentration of the benzene to which the crew members were exposed, the crew member's proximity to the benzene, the duration of the exposure, and wind speed and direction. Further, Defendants assert that one of the crew members's complaint of a headache does not qualify as sufficient facts and data to enable Dr. Weis to offer a diagnosis of benzene poisoning. Finally, Defendants contend that the general health effects of benzene is not relevant in this case. The Court rejects the Defendants' arguments.

The Court finds Dr. Weis's testimony to be both relevant and reliable. In the present case, the nature and the health effects of benzene are relevant to the assessment of whether a hazardous condition existed to trigger the reporting requirement under the Ports and Waterways Safety Act. Contrary to Defendants' argument, it is appropriate for an expert

8

to opine on the hazards associated with exposure to a particular contaminant based solely on knowledge of the contaminant. The lack of definite exposure levels of the crew does not bar Dr. Weis's testimony given that the United States is required to prove the existence of a "hazardous condition," not actual harm. Similarly, based upon his knowledge of benzene, it is also appropriate for Dr. Weis to testify that the crew member's physical symptoms after exposure to benzene were consistent with overexposure to benzene.

### C. Nathan Knapp

The Government's notice indicates that Mr. Knapp will testify regarding the health and safety hazards associated with benzene. Mr. Knapp will also provide an overview of the United States Coast Guard regulations related to benzene and discuss the reduction of exposure limits for benzene by OSHA, the National Institute of Occupational Safety and Health, and American Conference of Government Industrial Hygienists. Mr. Knapp will also opine that based on witness interviews and photographs of CBC-222 taken around June 20, 2005, the benzene leak on CBC-222 posed an inhalation hazard to the crew, a risk of structural failure of the vessel, the potential harm for both aquatic species and drinking water, and an explosion or fire risk.

Defendants do not challenge Mr. Knapp's qualification as an expert, but instead argue that the majority of his testimony is either not relevant to the issues in the present case or is not reliable. The Court disagrees. Mr. Knapp's proposed testimony regarding the health hazards and safety concerns associated with exposure to benzene and his characterization of benzene as a marine pollutant are relevant to whether there was a hazardous condition aboard

9

or caused by the benzene leak on CBC-222. Additionally, Mr. Knapp's testimony regarding the history and extent of benzene regulation, including an overview of the United States Coast Guard regulations, serves to educate the jury on the hazards of benzene to both human and marine life.

Defendants also object to Mr. Knapp's reliance on photographs of CBC-222 taken on June 20, 2005, or soon thereafter, to establish that benzene spilled into the river. Specifically, Defendants contend that the stains on CBC-222 depicted in the photographs cannot be said to be linked specifically to benzene, as opposed to water or some other chemical. Defendants have made a similar argument with respect to Mr. Hughes's statement in the investigation report about his observations of stains on CBC-222 on June 20, 2005. After discussions with counsel and a review of the arguments, the Court believes it is appropriate for Mr. Weis to testify that based upon his experience the stains in the photographs are consistent with benzene stains. Similarly, testimony from Mr. Hughes that the stains he saw on CBC-222 on June 20, 2005, are consistent with benzene stains is likewise admissible. However, these experts have no basis to testify that the stains observed on the barge on June 20, 2005, did in fact result from the leaks that occurred on June 16 or June 20.

## DEFENDANTS' EXPERTS

### A. Frank Paskewich

The Defendants' notice indicates that Captain Frank Paskewich is a twenty-six year veteran of the United States Coast Guard and an expert in the fields of marine environmental safety, commercial vessel safety, and regulatory compliance. Captain Paskewich will testify

that Coast Guard enforcement personnel are trained to look for aggravating circumstances when deciding whether, and how severely, the Coast Guard should address hazardous condition reporting issues under the Ports and Waterways Safety Act. Defendants' notice also reflects that Captain Paskewich is expected to testify that the crew's response to the leak in the present case was nearly the same as that approved by the Coast Guard when it received a report of a similar incident involving tank barge CBC-220 in November of 2007.

At the Daubert hearing, Captain Paskewich testified that while he believed that the leak aboard CBC-222 was a reportable incident, he explained that determining whether a hazardous condition exists involves a judgment call by the crew. Captain Paskewich also testified concerning the typical response by the Coast Guard after being notified of a small leak aboard a chemical barge.

The Government objects to Captain Paskewich's testimony arguing that how United States Coast Guard personnel are trained to address hazardous condition reporting issues is not relevant to issues in this case. The Government also argues that the United States Coast Guard's response to the November 10, 2007, incident involving another Canal Barge Company barge will not assist the jury in determining if there was a hazardous condition present in this case.

The Court finds that the testimony of Captain Paskewich concerning the factors Coast Guard enforcement personnel look for in determining if a hazardous condition exists will assist the jury in determining whether the benzene leak on CBC-222 was a hazardous condition and, if so, whether Defendants' failure to report it to the Coast Guard was willful.

11

While the Court finds it appropriate for Captain Paskewich to discuss the characteristics of hazardous conditions, any opinion offered by Captain Paskewich on whether the Defendants' failure to report the benzene leak on June 16, 2005, was or was not a knowing and willful violation is not appropriate. Whether the Defendants possess the requisite state of mind to establish a violation of the Ports and Waterways Safety Act is a matter for the jury. Fed. R. Evid. 704(b).

Additionally, the Court finds Captain Paskewich's testimony regarding the Coast Guard's response to the November 2007 incident involving a benzene leak aboard CBC-220 is relevant to whether Defendants violated the Clean Water Act by negligently discharging a pollutant into the waterways as charged in Count 3 of the Indictment. Evidence that the Coast Guard in another matter approved the placement of an epoxy patch to remedy a benzene leak and that such a remedy is consistent with the Coast Guard's longtime practice and with industry standards will assist the trier of fact in determining whether the crew's actions in repairing the leak was negligent.

### B. Charles Havnen

The Defendants' notice indicates that Mr. Havnen, who is an expert in regulatory standards, accident investigation, and vessel construction and repair, will offer an opinion that a deck spill does not automatically present a condition that may adversely affect the safety of the vessel, crew, or environment; rather, a deck spill must exceed a minimum threshold before it must be reported to the Coast Guard under the Ports and Waterways

Safety Act.[2] According to Defendants' notice, Mr. Havnen will opine that the conditions on the deck of CBC-222 on June 16, 2005, did not rise to the level of a hazardous condition given the fact that the leak was small; the leak was found and evaluated promptly; the leak was patched quickly; a little benzene accumulated on the deck; no benzene entered the water; and appropriate onboard and land-based personnel discussed the leak and gave consideration to whether it was a reportable condition.

At the request of the Government, Mr. Havnen appeared for a telephone interview on February 7, 2008. The Defendants have provided the Court with a transcript of the interview. Mr. Havnen testified that benzene is a hazardous substance with potential serious side effects. According to Mr. Havnen, generally if a barge which is transporting benzene obtains a crack or breach in the tank of the barge, the incident should be reported to the Coast Guard. However, Mr. Havnen opined that it is a judgment call as to what leaking constitutes a hazardous condition. (Charles Havnen Interview at 16.) Mr. Havnen also explained how he determines if a leak meets the threshold of a hazardous condition. (Id. at 17-30.)

Like Captain Paskewich's testimony, the Court finds that the testimony of Mr. Havnen will assist the jury in determining whether the condition on CBC-222 was a hazardous

---

[2] In their pretrial memorandum, the Government argues that a minimum threshold or reportable quantity is not an element of the offenses charged; and therefore, Mr. Havnen's testimony regarding reportable quantity should be excluded. The Court has read the February 7, 2008, interview with Mr. Havnen. The Court will give the Defendants an opportunity to respond to this argument in their pretrial memorandum before the Court decides the admissibility of this portion of Mr. Havnen's testimony. Defendants should include in their response exactly what Mr. Havnen proposes to testify about reportable quantity and an explanation of the statutes and code sections on which Mr. Havnen relies.

condition triggering the reporting requirement of the Ports and Waterways Safety Act. The jury will have to determine whether a hazardous condition existed. A hazardous condition applies only to a condition that may adversely affect the safety of any vessel, crew, or the environment. Therefore, in order to assist the jury in determining if the benzene leak in question rose to a level of a hazardous condition, it is appropriate for Mr. Havnen to testify about the characteristics of a deck spill that are, or are not, typical conditions that may affect the safety of the vessel, crew, or environment. Contrary to the Government's argument, this testimony does not intrude on the Court's authority to define the legal term "hazardous condition."

While the Court agrees with the Defendants that Mr. Havnen's testimony may also aid the jury in determining whether the Defendants' failure to report the benzene leak was a willful and knowing violation, any testimony by Mr. Havnen regarding whether, in his opinion, the Defendants' actions did or did not rise to a level of "willful and knowing" conduct is not appropriate. Fed. R. Evid. 704(b).

### C. Jerald Tinkey, Michael or Todd Rushing, Edward Shearer and Brent Miller

The Defendants' notice indicates that Captain Jerald Tinkey, who is an expert in mariner training and corporate operational matters, will testify that Canal Barge's training and vessel operation components are of high quality, and that the company meets or exceeds industry standards in these areas. Captain Tinkey is also expected to provide opinion testimony that it is a standard procedure for a captain to direct a tank barge crew to avoid speaking about a deck spill or similar incident on the radio.

The Defendants' notice also indicates that either Michael or Todd Rushing, owners of Rushing Marine Service, will testify that they conducted a Responsible Carrier Program audit of Canal Barge Company in June of 2005. Mr. Rushing will provide testimony regarding the Responsible Carrier Program which establishes safety standards in excess of those required by federal law. Mr. Rushing will offer the opinion that Canal Barge's relevant standards and practices fully satisfy or exceed Responsible Carrier Program's requirements.

The Defendants' notice indicates that both Edward Shearer, designer of CBC-222, and Brent Miller, contract administrator for the company that built CBC-222, will discuss the structure of CBC-222 and identify the features on the barge that exceed industry standards. Both Mr. Shearer and Mr. Miller will testify that the enhanced safety and environmental protection features on CBC-222 add significant cost to tank barge construction and reduce the per-trip revenue throughout the tank barge service.

The United States contends that expert testimony regarding Canal Barge's training, vessel operations, standards of practice, awards received,[3] and CBC-222's features that exceed industry safety standards is not probative of a material issue in this case. The Court disagrees. The Ports and Waterways Safety Act makes it a crime to willfully and knowingly fail to report a "hazardous condition" aboard a vessel or caused by a vessel. 33 U.S.C. §§ 1221, 1232; 33 C.F.R. § 160.215. In order to determine whether the United States has

---

[3]The Defendants' notice also indicates that Captain Paskewich will testify that Canal Barge Company has received two Benkert Awards from the Coast Guard in 2002 and 2004 for outstanding achievement in marine and environmental protection.

proven a violation of this statute, the jury will have to determine whether a hazardous condition existed, and if so, whether the Defendants willfully and knowingly failed to report it. A willful violation means a voluntary, intentional violation of a known legal duty. In other words, the Defendants must have acted voluntarily and intentionally and with the specific intent to do something they knew the law prohibited. Defendants' actions cannot be because of mistake or accident. The Court finds that expert testimony concerning the training of Canal Barge's employees regarding how to recognize and respond to a hazardous condition is relevant to the decision by the crew regarding whether the benzene leak was a hazardous condition which required reporting. This testimony could assist the jury in determining whether the Defendants may have simply made a mistake or a bad judgment call in determining that the benzene leak did not rise to the level of a hazardous condition to warrant reporting to the Coast Guard. Likewise, Canal Barge's safety standards, environmental awards received, and enhanced safety features of its barges could also assist the trier of fact in deciding whether the Defendants' failure to report the benzene leak was the product of an honest mistake or willful conduct.

Finally, the Court finds that Captain Tinkey's testimony regarding the appropriateness of a captain to direct a tank barge crew to avoid speaking of a deck spill on the radio is relevant. The Indictment charges that one of the overt acts in furtherance of the alleged conspiracy was Defendant Scarborough's directive barring the crew of the M/V Hagestad from talking about the leak over the radio. (Indictment at ¶ 30, Overt Act 2.) Defendants should be able to defend the allegations of overt acts contained in the Indictment.

### D. Troy Corbin

The Defendants' notice indicates that Troy Corbin, a marine chemist and industrial hygienist, will explain the qualifications, educational requirements, and professional duties of marine chemists. Mr. Corbin will testify that a marine chemist is not by education or training an expert in applying or judging the adequacy of temporary soft-patches of cargo tank leaks with epoxy or similar substances. Mr. Corbin will also testify about the chemical characteristics of benzene, including exposure rules, heat-related expansion and evaporation rates, and explosive limits. Mr. Corbin will opine that benzene, when in contact with epoxy-based patching substances, does not cause the patching substance to dissolve or disintegrate. Furthermore, he will testify that there was no risk of benzene exploding on June 16, 2005, even if an ignition source were place against the pinhole in the cargo tank. Finally, Mr. Corbin will testify that due to the small amount of benzene released on June 16, 2005, and the brief amount of time during which the crew members were exposed to the benzene, the crew members' exposure did not exceed the limits for imminent danger to life or short-term acute exposure.

The United States objects to Mr. Corbin's proposed testimony arguing that it is neither founded in science nor relevant. After a review of the Defendants' notice and the parties' arguments, the Court finds that Mr. Corbin's proposed testimony is both relevant and reliable. Mr. Corbin's testimony about the quality and integrity of the patch applied by Canal Barge relates directly to Count 3 of the Indictment and to the reasonableness of Defendants' actions when they used the epoxy compound to patch the leak discovered on June 16, 2005.

Similarly, Mr. Corbin's opinions that there was no risk of fire or explosion from the benzene leak and no risk of crew members getting sick are relevant to whether a hazardous condition existed. Thus, Mr. Corbin's testimony is appropriate because it relates to allegations made in the Indictment and counters the Government's proof on these issues. Furthermore, Mr. Corbin's opinion that Mr. Hughes is not qualified to judge the adequacy or integrity of the temporary patch placed on CBC-222 by the crew of the M/V Hagestad is appropriate. While the Court has already decided that Mr. Hughes is qualified as an expert and will permit his testimony, there is no prohibition against the Defendants challenging Mr. Hughes's education, training and experience necessary to render such an opinion.

### E. Paul Whitehead

The Defendants' original notice indicates that Paul Whitehead, Technical Service Manager for PPG Protective and Marine Coating, will testify regarding the chemical interaction between benzene and the epoxy patch. Mr. Whitehead will opine that benzene does not cause discoloration to the epoxy or produce stains that change the color of the coating. Furthermore, he will testify that it is impossible to ascribe the discolorations in the photographs of the CBC-222 to benzene, as opposed to water or other liquid. The Defendants notified the Court and the United States that Mr. Whitehead will not be available for trial and represented that they will provide the name and qualifications of another marine coatings expert. Defense counsel represented that the substance of the testimony of the new marine coatings expert will be the same as Mr. Whitehead's proposed testimony.

If the Government chooses to elicit testimony from Mr. Knapp or Mr. Hughes that the

stains on CBC-222 are consistent with benzene stains, the testimony from Defendants' marine coating expert countering this testimony is relevant. Absent testimony from the Government's experts on this topic, Defendants' marine coating expert will not be needed.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Exclude Testimony of United States' Experts [DN 47] and the United States' Motion to Exclude Testimony of Defendants' Experts [DN 51] are **DENIED**. The testimony of the Government's experts, David Hughes and Nathan Knapp, and the Defendants' experts, Frank Paskewich and Charles Havnen, is limited to the extent set forth in this Opinion.

cc: counsel of record