**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CRIMINAL ACTION NO. 4:07CR-12-JHM**

**UNITED STATES OF AMERICA**                                              **PLAINTIFF**

**v.**                          **MEMORANDUM OPINION AND ORDER**

**CANAL BARGE COMPANY, INC.**
**PAUL D. BARNES**
**JEFFERY A. SCARBOROUGH**
**and RANDOLPH MARTIN**                                    **DEFENDANTS**

This matter is before the Court on motions by Defendants, Canal Barge Company, Paul Barnes, Jeffrey Scarborough, and Randolph Martin, for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 and new trial pursuant to Fed. R. Crim. P. 33 [DN 77, DN 91, DN 93, DN 95]. The Government filed a response [DN 96]. The Defendants filed replies [DN 97, DN 98, DN 99]. Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

The Indictment in this case charged Canal Barge Company, Paul Barnes (Port Captain for Canal Barge), Jeffery Scarborough (Pilot of the M/V Hagestad), and Randolph Martin (Captain of the M/V Hagestad) with one count of conspiracy to violate the Ports and Waterways Safety Act; one count of violating the Ports and Waterways Safety Act; and one count of negligent violation of the Clean Water Act. On June 16, 2005, while traveling south on the Mississippi River, the crew of Canal Barge's M/V Walter Hagestad discovered benzene leaking from a crack in the tank of Canal Barge Company's barge 222 (hereinafter

"CBC-222").  The leak was originally stopped by rubbing a bar of soap over the crack. Ultimately, the crack of the barge was patched with red hand by Defendant Scarborough. The United States Coast Guard was not contacted regarding the leak.  The barge was passed to the tow of a second Canal Barge owned vessel, then fleeted in Cairo, Illinois, and eventually a third vessel owned by an outside company picked up the barge.  On June 20, 2005, as the third vessel headed east on the Ohio River with CBC-222 in tow, the barge began leaking benzene again.  The Coast Guard was contacted at that time.

The jury acquitted the Defendants of Count 1, conspiracy to violate the Ports and Waterways Act, and Count 3, negligent violation of the Clean Water Act.  The jury found the Defendants guilty on Count 2 of the Indictment which alleged that from "[o]n or about June 16, 2005, and continuing thereafter until on or about June 20, 2005, in the Western District of Kentucky, Henderson County, Kentucky, and elsewhere, defendants, Canal Barge Company, Inc., Paul D. Barnes, Jeffrey A. Scarborough, and Randolph Martin, each aided and abetted by the other, knowing of a hazardous condition aboard a vessel, . . . knowingly and willfully failed to immediately notify the nearest Coast Guard Marine Safety Office of a hazardous condition" in violation of the Ports and Waterways Safety Act, 33 U.S.C. § 1232(b)(1).

## II.  JOINT MOTION FOR JUDGMENT OF ACQUITTAL [DN 95]

The Defendants seek a judgment of acquittal on their convictions for violating the Ports and Waterways Safety Act as charged in Count 2 of the Indictment.  At the end of the Government's case and again at the close of the evidence, Defendants moved pursuant to

2

Fed. R. Crim. P. 29 for a judgment of acquittal.  Defendants again renew their motion for judgment of acquittal arguing that (1) the Government failed to prove that venue for Count 2 was proper in the Western District of Kentucky; (2) the Government failed to prove that the proper Coast Guard Safety Office in St. Louis was not notified of the June 16, 2005, leak aboard CBC-222; (3) the Government failed to prove that any violation of the Ports and Waterways Safety Act by the Defendants was knowing and willful; and (4) the Government failed to prove that a reportable quantity of benzene entered the Mississippi River on June 16, 2005.

## A.  Standard

A Rule 29 motion for judgment of acquittal "is a challenge to the sufficiency of the evidence." United States v. Jones, 102 F.3d 804, 807 (6th Cir. 1996).  "Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt."  United States v. Beddow, 957 F.2d 1330, 1334 (6th Cir. 1992) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also United States v. Humphrey, 279 F.3d 372, 378 (6th Cir. 2002)); United States v. Harrod, 168 F.3d 887, 889-90 (6th Cir. 1999). "In ruling on a sufficiency of the evidence challenge, the Court does not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the jury." United States v. Cannady, 2006 WL 1718193, *2 (E.D. Ky. June 21, 2006).

## B.  Discussion

### 1.  Venue

The Defendants seek a judgment of acquittal on their convictions for violating the Ports and Waterways Safety Act (hereinafter "PWSA") arguing that venue for this offense was not proper in the Western District of Kentucky.

"Both the United States Constitution and Rule 18 of the Federal Rules of Criminal Procedure provide that a person can be tried for a crime only where that crime was committed."  United States v. Wood, 364 F.3d 704, 709-710 (6th Cir. 2004)(citing United States v. Cabrales, 524 U.S. 1, 6-7 (1998)).  Specifically, the Constitution requires that all criminal trials "shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3.  The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI.  Fed. R. Crim. P. 18 likewise provides that "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." See Wood, 364 F.3d at 710.

"[T]he locus delicti [of the crime charged] must be determined from the nature of the crime alleged and the location of the act or acts constituting it." Cabrales, 524 U.S. at 6-7, 118 S.Ct. 1772. In determining the "locus delicti" of a crime, the Supreme Court instructs the Court to "initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." United States v.

4

Rodriguez-Moreno, 526 U.S. 275, 279 (1999). "Venue is therefore appropriate only in the district where the conduct comprising the essential elements of the offense occurred." Wood, 364 F.3d at 710.

"When a crime consists of a single, non-continuing act, the proper venue is clear: The crime 'is 'committed' in the district where the act is performed.'" United States v. Ramirez, 420 F.3d 134, 139 (2d Cir. 2005)(citation omitted)). However, in some cases, "'the [C]onstitution does not command a single exclusive venue.'" Id. (quoting United States v. Reed, 773 F.2d 477, 480 (2d Cir.1985)). "'[W]here the acts constituting the crime and the nature of the crime charged implicate more than one location,' . . . venue is properly laid in any of the districts where an essential conduct element of the crime took place." Id. See also Rodriguez-Moreno, 526 U.S. at 281 ("'[W]here a crime consists of distinct parts which have different localities [,] the whole may be tried where any part can be proved to have been done.'") (quoting United States v. Lombardo, 241 U.S. 73, 77 (1916)); United States v. Williams, 788 F.2d 1213, 1215 (6th Cir. 1986). Congress codified the rule that continuing offenses may be prosecuted wherever a proscribed act occurs in the first paragraph of 18 U.S.C. § 3237(a): "Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237 (a). The second paragraph of § 3237(a) specifies certain types of offenses that are *per se* continuing:

Any offense involving the use of the mails, transportation in interstate or

foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

18 U.S.C. § 3237(a).

The government bears the burden of proving venue by a preponderance of the evidence. Ramirez, 420 F.3d at 139; United States v. Crozier, 259 F.3d 503, 519 (6th Cir. 2001). "Because venue is an essential aspect of the government's case, '[i]f the government does not establish venue and the defendant objects at trial, then an appellate court must reverse the conviction.'" Wood, 364 F.3d at 710 (quoting United States v. Scaife, 749 F.2d 338, 346 (6th Cir. 1984)).

The Government argues that venue is proper in the Western District of Kentucky for Count 2 because the facts of this case show a continuing offense concluding in the Western District of Kentucky. The Government contends that venue in this case can be established in two ways.

a. First Paragraph of § 3237(a)

The Government first argues that pursuant to the first paragraph of 18 U.S.C. § 3237(a), venue is proper in any district where the crime was "begun, continued, or completed." The Government maintains that this crime is a continuing offense pursuant to the first paragraph of § 3237(a) because it began on the Mississippi River but ended on the Ohio River in the Western District of Kentucky. According to the Government, the Defendants became aware of the hazardous condition aboard the barge when it was on the

6

Mississippi River. The Government argues that the inadequately repaired barge continued and thus the hazardous condition continued in route until it was dropped in a fleeting area on the Kentucky shore, close to Wickliffe, Kentucky. The Coast Guard was notified of the hazardous condition on the barge only after it began leaking again as the M/V Larry Strain was pushing it up the Ohio River towards Catlettsburg. Thus, the Government maintains that this unreported hazardous condition endangered crewmen of another vessel and benzene was released into the Ohio River, all within the Western District of Kentucky.

The Court disagrees. Venue is not proper in the Western District of Kentucky pursuant to the first paragraph of § 3237(a). The PWSA violation charged in Count 2 does not involve a crime that began in one district and was completed in another and, therefore, is not a continuing offense pursuant to the first paragraph of § 3237(a). Instead, the offense punishes the knowing and willful failure to "immediately notify the nearest Coast Guard Sector or Group Office" of the existence of a hazardous condition. 33 U.S.C. § 1232(b)(1); 33 C.F.R. § 160.215.[1] The regulation in question specifies the time period within which a defendant must comply and the place to which a defendant's compliance must be directed. Therefore, the duty to notify the Coast Guard accrued upon discovery of the hazardous condition.

---

[1]Title 33 U.S.C. § 1232(b)(1) of the Ports and Waterways Safety Act provides "[a]ny person who willfully and knowingly violates this chapter or any regulation issued hereunder commits a class D felony." Title 33 C.F.R. § 160.215, entitled "Notice of hazardous conditions," provides "[w]henever there is a hazardous condition either aboard a vessel or caused by a vessel or its operation, the owner, agent, master, operator, or person in charge shall immediately notify the nearest Coast Guard Sector Office or Group Office. (Compliance with this section does not relieve responsibility for the written report required by 46 CFR 4.05-10.)."

Under the facts of this case, the duty to notify the Coast Guard accrued on the Mississippi River, well outside the Western District of Kentucky.  The evidence reflects that around 2:00 p.m. on June 16, 2005, on the Upper Mississippi River near mile marker 121, Dean Barnett and Aaron Lewis observed a crack on CBC-222 that was leaking benzene.  The crewmen notified Defendant Scarborough.  The crewmen initially stopped the leak with a bar of soap.  The evidence further reflects that at approximately 5:30 p.m., while Defendant Martin piloted the M/V Walter Hagestad, Defendant Scarborough patched the crack with red hand.  This conduct occurred while the CBC-222 and the Defendants were located on the Mississippi River.  Therefore, the Defendants' duty to immediately notify the nearest Coast Guard Marine Safety Office occurred while CBC-222 and the Defendants Martin and Scarborough were located on the Mississippi River.  Additionally, the Government does not dispute that the Coast Guard Sector or Group Office nearest the Defendants' location at this time was the Coast Guard's St. Louis Marine Safety Office.

In an attempt to justify venue in the Western District of Kentucky, the Government asserts that the PWSA offense at issue is a continuing offense because the unreported hazardous condition endangered crewmen of another vessel and benzene was released into the Ohio River, all within the Western District of Kentucky.  However, as noted by the Sixth Circuit, "the real issue in consideration of venue is the relationship between the place of the criminal behavior and the place of trial."  United States v. Milburn, 2008 WL 4646899, *2 (6th Cir. October 21, 2008). The PWSA offense charged in the present case does not punish the release of a hazardous condition, endangerment of crewmen, or the inadequate repair of

8

a leak, the offense punishes only the failure to immediately notify the Coast Guard of a hazardous condition.  Therefore, the offense was complete at the time the Defendants failed to immediately notify the Coast Guard of the hazardous condition which, as discussed above, occurred on the Mississippi River prior to entry into the Western District of Kentucky.

For these reasons, the Court finds that venue is not proper in the Western District of Kentucky pursuant to the first paragraph of § 3237(a).

### b.  Second Paragraph of § 3237(a)

The Government additionally argues that venue is proper in the Western District of Kentucky pursuant to the second paragraph of § 3237(a) which provides "[a]ny offense involving . . . transportation in interstate or foreign commerce . . . is a continuing offense and . . may be inquired of and prosecuted in any district from, through, or into which such commerce . . . moves." 18 U.S.C. § 3237(a).  The Government contends that the PWSA was enacted to protect the nation's waterways and encompasses the transportation of a vessel upon navigable waters of the United States.   33 U.S.C. § 1221.   According to the Government, CBC-222 was involved in the transportation of benzene in interstate commerce. The evidence reflects that the benzene was loaded into the barge in Wood River, Illinois, was pushed south on the Mississippi River, and eventually, east on the Ohio River.  Accordingly, the Government contends that the offense involved transportation in interstate commerce, is a continuing offense within the meaning of § 3237, and as a result, could be prosecuted in any district the barge moved from, through, or into.

The Court disagrees.  Contrary to the Government's argument, a crime is not an

9

offense involving transportation in interstate commerce under § 3237(a) if "it does not require any such transportation for the commission of the offense." United States v. Morgan, 393 F.3d 192, 200 (D.C. Cir. 2004). "The most natural reading of § 3237(a) ¶ 2 is to construe 'any offense involving' by reference to the *elements* of the offense at issue. 'Offense' obviously refers to a particular crime, so the language of the statute invites consideration of only the elements of that crime in determining whether the offense involved . . . 'transportation in interstate or foreign commerce.'" Id. at 199. As noted by the Court in United States v. Morgan:

> The implication of the Government's approach is that *any* offense involves transportation in interstate commerce so long as the interstate transportation is among the circumstances related to the commission of the offense. It is rare that a crime does not involve circumstances in which a person or instrumentality related to the crime has not passed through interstate commerce. Thus, under the Government's theory, § 3237(a) ¶ 2 would apply to almost every offense. This view is obviously untenable.

Id. at 200.

In the present case, the PWSA does not require interstate transportation as an element of the offense. As noted by the Defendants, the requirement to immediately notify the Coast Guard of a hazardous condition applies when a barge is empty and at anchor or when the barge travels exclusively between locations in a single state. Thus, the Court finds that failure to notify the Coast Guard of a hazardous condition under 33 C.F.R. § 160.215 is not an "offense involving" interstate transportation under § 3237(a) because "it does not require any such transportation for the commission of the offense." Id. at 200.

The Government cites United States v. Breitweiser, 357 F.3d 1249 (11th Cir. 2004)

and United States v. McCulley, 673 F.2d 346 (11th Cir. 1982) in support of its position. These cases involve crimes that occurred on an airplane while in flight and venue was held to be proper in any state through which the plane passed or landed. The Courts held that § 3237 offered the only means by which the courts could "prevent a crime which has been committed in transit from escaping punishment for lack of venue." Breitweiser, 357 F.3d at 1253-54. These cases are distinguishable. In the airplane-overflight cases "[i]t would be difficult if not impossible for the government to prove, even by a preponderance of the evidence, exactly which federal district was beneath the plane when [the defendant] committed the crimes," Breitweiser, 357 F.3d at 1253; however, in the present case, the evidence reflects the geographical location where the requirement to notify the Coast Guard of a hazardous condition occurred. Additionally, in the airplane-overflight cases, venue was proper in any state through which the plane passed or landed while the defendant was on the plane. In the present case, the Defendants transferred the barge in question to another tug outside of the Western District of Kentucky. The barge did not pass through this district with these Defendants on it or with any Canal Barge Company tug in control of it.

For these reasons, the Court finds that venue is likewise not proper in the Western District of Kentucky pursuant to the second paragraph of § 3237(a). As a result, having found venue not proper in the Western District of Kentucky, the Court must vacate the conviction of the Defendants and enter a judgment of acquittal consistent with this Opinion.

Notwithstanding, the Court will address the remaining issues raised by the Defendants' motions for judgment of acquittal and new trial. See Fed. R. Civ. P. 29(d).

11

## 2.  Notification of the nearest Coast Guard Safety Office

Defendants argue that the Government failed to prove that the Defendants did not immediately notify the nearest Coast Guard Marine Safety Office of the June 16, 2005 leak. According to Defendants, the nearest Coast Guard Marine Safety Office was the office in St. Louis, Missouri.  See 33 C.F.R. 3:40-40.  Defendants contend that the only evidence presented at trial to support the Government's contention that no proper report was made came from two Coast Guard officers stationed in Louisville, Kentucky, who testified that the Louisville office became involved on June 20, 2005.

Viewing the evidence in the light most favorable to the Government, the Court finds that the Government presented sufficient evidence that Defendants failed to notify any Coast Guard Marine Safety Office of the hazardous condition.  For example, the record reflects that Officer Robert Moran, a marine inspector from the Louisville Coast Guard Marine Safety Office, testified that he questioned Jay Little, Canal Barge Company maintenance supervisor, about the reason that "no Coast Guard, not the Coast Guard in Louisville, any Coast Guard, where the barge had came from, . . . had not been contacted." (Moran at TR 6:252; see also David Hughes at TR 6:141.)  Furthermore, Officer Chuck Mellor, Chief of Investigations of the Louisville Coast Guard, testified that he reviewed the M/V Walter Hagestad's ship log and found that the log failed to record the benzene leak or any calls to the Coast Guard. (Mellor at TR 8:40,43.)  Finally, the record reflects that Robin Mason, Canal Barge Vessel Operations Administration, testified that she filled out incident reports related to Canal Barge vessels for the Coast Guard and was surprised a written report had not been filled out for the

12

first leak prior to the June 21, 2005 report.  (Mason at TR 6:213.)  Given this testimony, the Court finds that the jury had sufficient evidence to find that the Defendants failed to notify any Coast Guard Marine Safety Office, including the St. Louis office, of the hazardous condition.  Therefore, a judgment of acquittal on this ground is denied.

### 3. Knowingly and Willfully

Defendants argue that a judgment of acquittal on Count 2 is also warranted because the Government failed to prove the elements of knowledge and willfulness.  Defendants maintain that the evidence was insufficient to prove the PWSA's two *mens rea* elements: (1) that the Defendants actually knew that the circumstances on the CBC-222 presented a "hazardous condition," and (2) that the Defendants, if they recognized that they had a duty to immediately notify the Coast Guard of the situation, purposefully violated that duty.

Viewing the facts in the light most favorable to the Government, the Court finds that there is sufficient evidence for the jury to find that each Defendant was aware of the hazardous condition and willfully failed to notify the Coast Guard.  With respect to knowledge of a hazardous condition, the Government presented evidence that benzene is a known human carcinogen and that benzene vapors are very explosive.  (Chris Weis at TR 1:81-95.)  The record also indicates that the Defendants had knowledge of the leak of benzene.  The leak was discovered by Dean Barnett and Aaron Lewis.  Barnett notified Defendant Scarborough in the wheelhouse and informed him about the leak.  Barnett testified that he stopped the leak temporarily with a bar of soap.  Barnett also informed Defendant Martin about the leak and the soap patch. (Barnett at TR 2:72-155.)  According to Barnett,

at the watch change, Barnett and Defendant Scarborough went down to the deck to patch the barge with red hand.  (Barnett at TR 2:112-113.)  Additionally, Officer Mellor testified that Defendant Barnes submitted a written statement indicating he had knowledge of the benzene leak and made the suggestion to patch it with red hand.  (Mellor at TR 8:19-21.)

With respect to willfulness, the Government introduced evidence that the three individual Defendants failed to follow the established company procedures for a spill or threat of a spill.  (DeVaux at TR 3:161-187, 195.)  Captain John DeVaux, a captain for the Canal Barge Company, testified that he had been trained to call the Coast Guard when a spill or threat of spill occurred aboard a barge. (Id. 186-187, 195.)  Further, the jury was presented with evidence that both Defendant Scarborough and Defendant Martin failed to include the leak or the patch of the leak in the M/V Walter Hagestad's ship log.  (Mellor at TR 8:40, 43.)

Given this evidence, the Court finds that a rational trier of fact could conclude that each Defendant was aware of the hazardous condition and willfully failed to notify the Coast Guard, and thus, a judgment of acquittal on this basis is denied.

### 4.  Reportable Quantity

Defendants argue that the Government failed to prove that a reportable quantity of benzene entered the Mississippi River on June 16, 2005.  Defendants contend that there can be no criminal liability under the PWSA unless the Government proves that a reportable quantity of benzene entered the water.  The Defendants claim that the reportable quantity requirement of a ten-pound minimum set forth in the Clean Water Act should be considered a prescriptive mandate for criminal liability under the PWSA.  See 33 U.S.C. § 1321(b)(3)(i);

14

40 C.F.R. § 117.3.

The Court disagrees.  The proof of a reportable quantity of a hazardous substance is not an element of the PWSA offense charged in this case.  The PWSA only requires proof of a hazardous condition as defined by 33 C.F.R. § 160.204.  Nothing in the regulatory definition of hazardous condition, or in the criminal enforcement provision of the PWSA, mandates that a leak or spill meet the reportable quantity threshold set forth in the Clean Water Act.  Because it is not an element of the PWSA offense, the Government was not required to prove that a reportable quantity of benzene was released.  Accordingly, a judgment of acquittal based on this argument is not warranted.

### III.  MOTION FOR NEW TRIAL [DN 95]

The Defendants request a new trial pursuant to Federal Rules of Criminal Procedure 33 arguing that (1) the weight of the evidence does not support a finding of a hazardous condition; (2) the credibility of Aaron Lewis creates a reasonable doubt whether a hazardous condition existed; (3) the evidence fails to establish that the Defendants knowingly and willfully failed to notify the Coast Guard; (4) the Government presented prejudicial evidence at trial; and (5) cumulative error entitles Defendants to a new trial.

### A.  Standard

Rule 33 provides that "[u]pon a defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  The decision of whether to grant a new trial is committed to the "sound discretion of the trial judge."  U.S. v. Barlow, 693 F.2d 954, 966 (6th Cir. 1982); United States v. Pierce, 62 F.3d

15

818, 823 (6th Cir. 1995).  When presented with a Rule 33 motion, the district court may

weigh the evidence and assess the credibility of the witnesses. "It has often been said that

he/she sits as a thirteenth juror."  United States v. Solorio, 337 F.3d 580, 589 n.6 (6th Cir.

2003) (internal citations omitted).  However, "new trial motions are disfavored and should

be granted with caution." U.S. v. Willis, 257 F.3d 636, 645 (6th Cir. 2001) (citation omitted).

The trial court should exercise this discretion "only in the extraordinary circumstances where

the evidence preponderates heavily against the verdict." United States v. Ashworth, 836 F.2d

260, 266 (6th Cir. 1988).  The Defendants bear the burden of proving that a new trial should

be granted.  United States v. Davis, 15 F.3d 526, 531 (6th Cir. 1994); U.S. v. Turner, 995

F.2d 1357, 1364 (6th Cir. 1993).  Based on this standard, the Court shall address Defendants'

arguments in support of their motion for new trial.

## B.  Discussion

### 1.  Hazardous Condition

Defendants argue that the weight of the evidence does not support the jury's finding

of a hazardous condition on CBC-222.  Defendants maintain that Gerry Tinkey, their marine

consultant, testified that a product leak capable of being stopped by a bar of soap would not

rise to the level of a hazardous condition.  Similarly, Defendants point to the testimony of

Government witness Clyde Moore, a Canal Barge Company Pilot, who testified that he

would not have reported a pinhole leak to the Coast Guard because it was not a hazardous

condition.  Finally, Defendants contend that even if the Coast Guard had been notified of the

leak, the Coast Guard would likely have done nothing at all as was the case in November of

16

2005 when a report of a nearly identical spill was made by Canal Barge Company.

After a review of the record, including the testimony referenced by Defendants, the Court concludes that the Government presented sufficient evidence that a hazardous condition existed.  At trial, for example, Dean Barnett testified that he and Lewis first discovered a leak aboard CBC-222 and that at that time the benzene was pooling up two to three feet from the bulkhead. (Barnett at TR 2:90-91.)  Furthermore, Chris Weis, toxicologist with the Environmental Protection Agency, testified that benzene is a known human carcinogen and that benzene vapors are very explosive.  (Chris Weis at TR 1:81-95.)  Given the testimony of these witnesses, the Court concludes that the jury's finding of a hazardous condition is not against the weight of the evidence and the interest of justice does not warrant on new trial based on this argument.

### 2.  Credibility of Aaron Lewis

Defendants also argue that the perjured testimony of the Government's main witness, Aaron Lewis, is sufficient by itself to create a reasonable doubt as to whether a hazardous condition existed on CBC-222.  Defendants contend that Lewis committed perjury when he testified regarding the nature of the benzene leak and the circumstances surrounding the call he made to Canal Barge Company personnel.[2]

"A district judge, in considering the weight of the evidence for purposes of

_____

[2] The Defendants do not argue that their convictions were obtained with the use of evidence that the Government knew or should have known was false.  See United States v. Pierce, 62 F.3d 818, 834 (6th Cir.1995); United States v. Agurs, 427 U.S. 97, 103 (1976).

adjudicating a motion for new trial, may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." United States v. Hughes, 505 F.3d 578, 593 (6th Cir. 2007). The Court acknowledges that Aaron Lewis's credibility and believability was called into question at trial. However, as discussed above, the Court concludes that the Government presented sufficient evidence that a hazardous condition existed even without the alleged contradictory testimony of Mr. Lewis and therefore, a new trial will not be granted on this ground.

### 3. Knowingly and Willfully

Defendants argue that the evidence does not establish that the Defendants knowingly and willfully failed to immediately notify the Coast Guard. The Defendants raised the same arguments in their Motion for Acquittal. After reviewing the evidence presented at trial, assessing the credibility of the witnesses, and for the reasons previously discussed above, the Court concludes that the Government introduced sufficient evidence to prove that each Defendant was aware of the hazardous condition and willfully failed to notify the Coast Guard. Therefore, the jury's conclusion on the issue of knowingly and willfully is not against the manifest weight of the evidence and a new trial will not be granted on this basis.

### 4. Prejudicial Evidence at Trial

Defendants argue that the Court improperly permitted the Government to introduce prejudicial evidence at trial.

First, Defendants argue that the Government was improperly permitted to elicit testimony from witnesses concerning stains on CBC-222. Defendants maintain that this

testimony was irrelevant and highly prejudicial because there was no evidence, such as samples of the barge surface, to conclusively link the stains in question to the benzene spill.

Officer Mellor testified that he observed stains on CBC-222 when he inspected it on June 24, 2005.  Officer Mellor further testified that the stains "looked to be fresh or looked to be new stains" (Mellor at TR 8:24) and that he traced the stains to the location where the leak occurred.  (Mellor at TR 8:28; see also Moran 6:246, 247.)  This testimony was relevant to the issue of whether a hazardous condition existed aboard CBC-222 and the testimony of both Officer Mellor and Officer Moran supported the Government's position that benzene spilled into the river.  This evidence was properly admitted.

Second, the Defendants argue that the Court improperly permitted the Government to aks hypothetical questions to non-defendant Canal Barge captains.  Defendants contend that such testimony was expert testimony and should be excluded because these witnesses were not disclosed.  In reviewing the testimony in question, the Court finds that the witnesses did not offer expert opinions pursuant to Fed. R. Evid. 702 and therefore, this testimony was properly admitted.

### 5.  Cumulative Error

Defendants argue that the alleged cumulative errors during trial warrant reversal of their convictions. A defendant may "show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair."  United States v. Trujillo, 376 F.3d 593, 614 (6th Cir. 2004); see also United States v. Hines, 398 F.3d 713, 719 (6th Cir. 2005).  In the present case, there were no errors in Defendants' trial and, as a

result, Defendants' cumulative error claim must therefore fail.

### IV.  Defendant Martin's Additional Motion for Judgment of Acquittal [DN 91]

Defendant, Randolph Martin, separately moves the Court for a judgment of acquittal on Count 2 of the Indictment on the grounds that the Government did not show that a hazardous condition existed on CBC-222 while Defendant Martin was a person in charge of that vessel.  Martin argues that it was undisputed that the leak at issue was discovered on CBC-222 between noon and 1:30 p.m. on June 16, 2005.  At the time the leak was discovered Martin was off-duty and asleep.  Martin first learned of the leak around 3:00 p.m. while exercising on a treadmill; he was not yet on duty at that time.  According to Martin, he came on duty at 5:30 p.m. and was informed that there had been a leak, it had been patched and was no longer leaking.  Martin states that there was no testimony that he was informed as to whether or not the Coast Guard had been notified.  Evidence reflects that an hour and half after Martin assumed control of the vessel, CBC 222 was handed off to another tow vessel. At that time, Martin alerted the captain of the M/V Merrick Jones that the barge had experienced a small leak which had been patched and that the captain should keep an eye on it.  Martin argues that no duty to immediately notify of an existing hazardous condition attached at the time he took control of the vessel because there was no hazardous condition. Martin contends that if a hazardous condition existed when the leak became manifest, the duty to immediately notify fell on the person in charge at that time, which was not Martin. As a result, Martin maintains that he could not have knowingly and willfully failed to immediately report a hazardous condition and a judgment of acquittal is warranted.  See

20

United States v. Rivera, 942 F. Supp. 732 (D. P.R. 1996).

Viewing the evidence in the light most favorable to the Government, the Court finds that a rational trier of fact could have found that Defendant Martin knowingly and willfully failed to immediately report a hazardous condition to the Coast Guard. The Government offered proof at trial that Martin was notified by Barnett of the leak before the red hand patch was applied. (Barnett at TR 2:154-155.) Additionally, the record reflects that at the watch change, Barnett and Defendant Scarborough went down to the deck to patch the barge with red hand. (Barnett at TR 2:112-113.) The Government also presented evidence that Defendant Martin failed to include the leak or the patch of the leak in the M/V Walter Hagestad's ship log. (Mellor at TR 8:40, 43.) Additionally, Captain John DeVaux, a captain for Canal Barge Company, testified that he had been trained to call the Coast Guard when a spill or threat of spill occurred aboard a barge and that the responsibility to call the Coast Guard extends if the leak occurred on another person's watch. (DeVaux at TR 3:186-187, 195, 240-242.) Finally, at all relevant times, Defendant Martin was the captain of the M/V Walter Hagestad (Barnett at TR 2:98) and the duty to report under the PWSA extends to a "person in charge of the vessel." Given this evidence, the Court finds there is sufficient evidence to support the verdict as to Defendant Martin on Count 2. Accordingly, a judgment of acquittal will not be granted on this basis.

## V. Canal Barge's Additional Motion for Judgment of Acquittal [DN 93]

Defendant, Canal Barge Company, separately moves the Court for a judgment of acquittal on Count 2 of the Indictment on the ground that the Government offered no

competent proof that any Company employee violated the PWSA with the intent to benefit the Company or advance the Company's interest.  Canal Barge argues that the witnesses consistently testified that Canal Barge never rewarded speed of delivery at the risk of harming employee health or environmental safety.  Additionally, Canal Barge argues that the evidence reflected that it was known among their employees that conduct endangering health or environmental safety would be punished and that employees risked termination for noncompliance with health and safety matters.  Canal Barge argues that the Government offered no proof that any Canal Barge employee engaged in any wrongdoing with the intent to benefit the corporation and therefore, a judgment of acquittal is warranted.

In this case, there was sufficient evidence to support the jury's finding that the criminal acts at issue were done, at least in part, with the intent to benefit the corporation. Officer Moran testified that upon his arrival at the scene, a Canal Barge representative requested that the barge be permitted to take the cargo to the ultimate destination of Catlettsburg.  (Moran at TR 6:267.)  Moran testified that if the Coast Guard would have required CBC-222 to be off-loaded and repaired, "it would have cost some time and money." Further, Moran testified that delays were something that port captains and barge companies are concerned with because delays cost money and time.   (Id. at TR 6:267-268.) Additionally, Canal Barge Company Captain Simpson Kemp also testified that delays, though normal on the river, cost money.  (Kemp at TR 4:84.)  Viewing this evidence in the light most favorable to the Government, a rational trier of fact could conclude that one or more of the Defendants intended, at least in part, to benefit the corporation.

22

## VI.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Defendants'
motion for acquittal pursuant to Fed. R. Crim. P. 29 for lack of venue [DN 95] is **granted**.
Pursuant to Fed. R. Crim. P. 29(d)(1), Defendants' remaining motions are **denied**.


cc: counsel of record